UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | INDICTMENT NUMBER: |
| | ) | 5:08-CR-40 (HL) |
| BERRIEN SUTTON, | ) | |
| | ) | |
| Defendant. | ) | |

## BERRIEN AND LISA SUTTON'S MOTION TO DISMISS INDICTMENT FOR OUTRAGEOUS GOVERNMENTAL MISCONDUCT AND/OR MOTION FOR RELEASE OF GRAND JURY TRANSCRIPTS

> Our Government is the potent, omnipresent Leader. For good or for ill, it teaches the whole people by its example. Crime is contagious. If the government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law until himself; it invites anarchy. To declare that in the administration of the criminal law the end justifies the means - to declare that the Government may commit crimes in order to secure the conviction of a private criminal - would bring terrible retribution. Against that pernicious doctrine this Court should resolutely set its face.
>
> - *Olmstead v. United States*, 277 U.S. 438, 485 (1928), *(Brandeis, J., dissenting)*

COME NOW BERRIEN AND LISA SUTTON, two of the Defendants herein, and file this

their Motion to Dismiss Indictment for Outrageous Governmental Misconduct and/or Motion for

Release of Grand Jury Transcripts and accompanying Memorandum in Support thereof.

This the __25th__ day of August, 2008.


                                        **s/ Thomas A. Withers, Esq.**
                                        Thomas A. Withers, Esq.
                                        Georgia Bar Number: 772250
                                        Attorney for Berrien Sutton

Gillen, Withers & Lake, LLC
8 East Liberty Street
Savannah, Georgia 31401
Telephone:  (912) 447-8400
E-Mail: Twithers@gcpwlaw.com


                                        **s/Charles E. Cox, Jr., Esq.**
                                        Charles E. Cox, Jr., Esq.
                                        Georgia Bar Number: 192305
                                        Attorney for Lisa Sutton

P.O. Box 67
Macon, Georgia 31202-0067
Telephone: (478) 757-2990
Facsimile:  (478) 757-2991
E-Mail: cecoxjr@cbi.mgacoxmail.com

## TABLE OF CONTENTS

Page

MOTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

      MEMORANDUM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

         A.    The Legal Standard for Dismissal of an Indictment. . . . . . . . . . . . .5

         B     The Duty of the Prosecutor is to do Justice . . . . . . . . . . . . . . . . . . .8

I.    STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

         A.    The Government's Scheme to Manufacture Criminal Charges Against Judge Blitch. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

         B.    The Government's Promise of Immunity and False Representations to Mr. Sutton . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

         C.    Prosecutorial Misconduct Before the Grand Jury . . . . . . . . . . . . . .10

             1)    The Government's Abuse of the Subpoena Power of This Court and Grand Jury Process. . . . . . . . . . . . . . . . . . . . . . . . .11

             2)    Misconduct and Abuses Against Sheriff Peterson. . . . . . . . . 11

             3)    Clerk of Court Danny Lecesse and the Government's Knowledge of Evidence Relating to Mr. and Mrs. Sutton's Innocence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

             4)    Misconduct and Abuses Against Judge Peterson. And Ms. Sissy Suggs. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

             5)    Misconduct and Abuses Against Attorneys . . . . . . . . . . . . . . 13

         D.    AUSA Donald Johstono Seeks Appointment as Judge of the Superior Court of Clinch County . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

         E.    The Government's Subpoenas to, and Search Warrant for, Sutton & Associates, P.C.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

II.    **ARGUMENT AND CITATION OF AUTHORITIES**. . . . . . . . . . . . . . . . . . . . . . . . . . . 16

      A.    **This Action May, and Should, Be Dismissed on Grounds of Outrageous Government Misconduct**. . . . . . . . . . . . . . . . . . . . . . . . . 16

      B     **This Action May, and Should, Be Dismissed on Grounds of the Government's Abuse of the Grand Jury Process and This Court's Subpoena Power**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

      C.    **This Action Should Be Dismissed Based on Outrageous Government Misconduct and Prosecutorial Vindictiveness**. . . . . . . . . . . . . . . . . . .21

      D.    **In the Alternative This Court Should Order Disclosure of the Grand Jury Transcripts**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

III.   **CONCLUSION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

      **CERTIFICATE OF SERVICE**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | INDICTMENT NUMBER: |
| | ) | 5:08-CR-40 (HL) |
| BERRIEN SUTTON, | ) | |
| | ) | |
| Defendant. | ) | |

## BERRIEN AND LISA SUTTON'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS FOR OUTRAGEOUS GOVERNMENTAL MISCONDUCT AND/OR MOTION FOR RELEASE OF GRAND JURY TRANSCRIPTS

COME NOW, Berrien Sutton and Lisa Sutton, by and through the undersigned counsel, and

file this, their Memorandum in Support of their Motion to Dismiss Based Upon Outrageous

Governmental Misconduct and/or for Release of Grand Jury Transcripts, and respectfully request that

this Court dismiss this action or, at minimum, provide the defense with discovery of the misconduct,

which occurred before the grand jury pursuant to the Due Process and Grand Jury Clauses of the

Fifth Amendment and Rules 6(e)(C)(i) and 6(e)(C)(ii) of the Federal Rules of Criminal Procedure,

and for an order releasing the grand jury transcripts pertaining to this investigation pursuant to

Federal Rule of Criminal Procedure 6(e). [1]

### A.    The Legal Standard for Dismissal of an Indictment

A grand jury's function is to serve as a check on prosecutorial power, and a grand jury must

---

1. Because the government has treated the cases they have prosecuted related to Clinch County as one case, this Motion addresses the entirety of the government's misconduct. *See United States v. Leccese*, Case No. 7:07-CR-21 (HL) (Information referring to Mr. Sutton as co-conspirator #2), *United States v. Sumner*, Case No. 5:08-CR-33-HL (Indictment referring to Mr. Sutton as co-conspirator # 2 and Mrs. Sutton as co-conspirator # 3); *United States v. McCranie*, Case No. 7:08-CR-SA-WLS (Indictment referring to Mr. Sutton as Co-conspirator # 2).

have the liberty of effectively serving its role. However, "[w]hen the prosecutor manipulates the array of evidence to the point of depriving the grand jury of independence and impartiality, the courts should not hesitate to vindicate the demands of due process." *United States v. Phillips Petroleum Co.*, 435 F.Supp. 610, 620 (W.D. Okla. 1977).

In *United States v. Russell*, 411 U.S. 423 (1973),   the United States Supreme Court envisioned that it might "some day be presented with a situation in which the conduct of law enforcement  agents is so outrageous that due process principles would absolutely bar the government  from invoking the judicial processes to obtain a conviction," *id.* at 431-32. The doctrine of outrageous government conduct originated from this *dicta* in *Russell. See United States v. Santana*, 6 F.3d 1, 3 (1st Cir. 1993) ("Although it has a comfortably familiar ring, 'outrageous government misconduct' is surpassingly difficult to translate into a closely defined set of behavioral norms.") The answer is all the more difficult because due process is not a technical fixed concept. The Supreme  Court  has recognized that, regardless of any prejudice to a defendant at trial, an indictment could be subject to dismissal if it was the product of "a history of prosecutorial misconduct, spanning several cases, that is so systematic and pervasive as to raise a substantial and serious  question  about the fundamental fairness of the process which resulted in the indictment." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 259 (1988). Similarly, the Supreme Court has recognized that the government's investigatory conduct may be "so outrageous that due process principles  would  absolutely bar the government from invoking judicial processes to obtain a conviction." *Hampton v. United States,* 425 U.S. 484, 491-98 (1976) (Powell, J., concurring). In order to prevail under this theory, a defendant must show "that the challenged governmental conduct violated 'that fundamental fairness, shocking to the universal sense of justice.'" *United States v.*

6

*Haimowaitz*, 725 F. 2d 1561, 1577 (11th 1984) (quoting *Russell*, 411 U.S. at 432). "Whether outrageous government conduct exists 'turns upon the totality of the circumstances with no single factor controlling.'" *Haimowitz*, at 1577 (citation ommitted); *accord United States v. Martin*, 480 F.Supp. 880, 886 (S.D. Tex. 1979) (dismissing indictment where individual wrongs may not be enough, but "the totality of circumstances presented" warranted dismissal); *United States v. Phillips Petroleum Co.*, 435 F.Supp. 610, 622 (N.D.Okl. 1977) (dismissing indictment where the "totality of circumstances" "reflects a serious lack of appreciation of the historic functions and procedures of the Grand Jury"); *United States v. Braniff Airways, Inc.*, 428 F.Supp. 579, 580 (W.D. Tex. 1977) (dismissing indictment given multiple prosecutorial improprieties)..

A final source of the Court's authority over the government's conduct in this case is its supervisory power. In *United States v. Hastings*, 461 U.S. 499, 505 (1983), the Supreme Court recognized that the supervisory powers of the federal judiciary could be invoked either "to implement a remedy for violation of recognized rights" or "as a remedy designed to deter illegal conduct." The use of the Court's supervisory powers is particularly appropriate where, as here, the government's misconduct has compromised "the integrity of the judicial process' and threatened "to impair the Court's role as an impartial adjudicator." *United States v. Caputo*, 633 F.Supp. 1479, 1492 (E.D. Pa. 1986), *rev'd on other grounds sub nom; United States v. Martino*, 825 F. 2d 754 (3d Cir. 1987); *see also United States v. Hogan*, 712 F.2d 757, 762 (2d Cir. 1983) (dismissing indictment where DEA agents gave false testimony before a grand jury); *United States v. Samango*, 607 F. 2d 877, 882 (9th Cir. 1979) (Dismissing indictment based on perjured testimony in the grand jury); *United States v. Basurto*, 497 F. 2d 781 (9th Cir. 1974) (same); *United States v. Archer*, 486 F.2d 670, 676-77 (2d Cir. 1973) (criticizing government investigation that used false arrest

and fabricated testimony before the grand jury); *see generally Wheat v. United States*, 486 U.S. 153, 160 (1988) ("[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them").

## B.    The Duty of the Prosecutor is to Do Justice

A prosecutor's first obligation is not to convict, but to serve truth and justice, including ensuring the defendant's right to a fair trial. *See United States v. Leung*, 351 F.Supp. 2d 992, 998 (C.D. Cal. 2005). Fundamentally, "the prosecutor's obligation is to protect the innocent as well as to convict the guilty, to guard the rights of the accused as well as to enforce the rights of the public." ABA Standard 3-1.2, Commentary (App. C at 188-120).

As the Supreme Court observed long ago in a now-famous statement of a prosecutor's duty:

The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor-indeed, he should do so. But, *while he may strike hard blows, he is not at liberty to strike foul ones*. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

*Berger v. United States*, 295 U.S. 78, 88 (1935) (emphasis added). In addition, as the Eleventh Circuit Court of Appeals has expressly held:

A United States district attorney carries a double burden. He owes an obligation to the government, just as any attorney owes an obligation to his client, to conduct his case zealously. But he must remember also that he is the representative of a government dedicated to fairness and equal justice to all and, in this respect, he owes a heavy obligation to the accused. Such representation imposes an overriding obligation of fairness so important that Anglo-American criminal law rests on the

8

foundation: better the guilty escape than the innocent suffer.

*United States v. Eason,* 920 F.2d 731, 735-36 (11th Cir. 1990).

## I.   STATEMENT OF FACTS

Upon information and belief, Mr. and Mrs. Sutton believe that discovery and an evidentiary hearing in this matter will show the following acts of misconduct:

## A. The Government's Scheme to Manufacture Criminal Charges Against Judge Blitch

The Federal Bureau of Investigation ("FBI") had investigated Judge Blitch for years but had not uncovered any criminal activity. In early 2006 the government schemed to manufacture criminal charges against Judge Blitch. The government recruited Eddie Tucker, a convicted felon whose brother was incarcerated in federal prison for drug crimes, to entrap Judge Blitch. FBI agents provided Tucker with five pounds of marijuana, $3,600 in taxpayer money, a recording device, a vehicle rented with taxpayer money and instructed Tucker to travel to Homerville, Georgia, where the agents had arranged to have him arrested. Following his arrest an arrest warrant was sworn out for Tucker that was based on false information. *See* Exhibit "A".

Tucker was taken before Clinch County Senior Magistrate Judge Linda Peterson, who was a relative of Tucker by marriage. Magistrate Judge Peterson granted Tucker bond, which the FBI agents paid for with taxpayer funds.

The FBI agents were aware that Judge Blitch collected coins as a hobby, provided Tucker with some gold coins and instructed him to visit Judge Blitch and ask for his assistance in selling the coins. The agents hoped that Judge Blitch would arrange for a more lenient sentence for Tucker in exchange for the gold coins. However Judge Blitch merely assisted Tucker in the sale of some of the coins, and did not fall into the agents' bribery trap.

9

Tucker was indicted for possession with intent to distribute marijuana by an Alapaha Judicial District grand jury, which necessarily entailed false testimony by a law enforcement officer with the approval of the FBI agents. *See* Exhibit "B". Tucker entered into a plea agreement with the Alapaha Circuit District Attorney's Office. However, when the agreement was presented to Judge Blitch, Clinch County Sheriff Peterson commented in open court to the effect that Tucker's agreed sentence was too low given the fact that he was found with approximately five pounds of marijuana. Sheriff Peterson also stated that he had heard that Tucker was an informant. Judge Blitch recused himself from the case, and the District Attorney dismissed the charges against Tucker. *See* attached Exhibit "C"

The Tucker conduct demonstrates that the alleged investigation and prosecution of persons in the Alapaha District disregarded any investigative protocols and constitutional limitations from its very inception. Not only did the FBI agents attempt to entrap Judge Blitch and manufacture charges against him, but also they willfully suborned perjured testimony to a grand jury to further this unlawful aim.

## B. The Government's Promise of Immunity and False Representations to Mr. Sutton

Mr. and Mrs. Sutton adopt by reference the Statement of Facts set forth in their Motion to Suppress Statements as if fully set forth herein. See, Doc # 95, pp. 2-8.

## C. Prosecutorial Misconduct Before the Grand Jury

The government's wide-ranging misconduct and use and abuse of the grand jury as an inquisitorial tool in its investigation of Judge Blitch is staggering. The FBI surreptitiously recorded Judge Blitch's telephone calls and placed a recording device in his office, pursuant to an order of this Court as revealed by publicly filed indictments. *See United States v. Sumner,* Case No.

10

5:08-CR-33-HL, *United States v. McCranie,* Case No. 7:08-CR-21-HL. Because the wiretaps and surreptitious recording devices of Judge Blitch's office produced no actionable criminal activity, the government resorted to setting perjury traps to unwary attorneys and others who had been recorded speaking with Judge Blitch. In so doing, the government violated their own ethical rules and departed from Department of Justice standards as set forth in the Suttons' Motion to Suppress Statements, Doc # 95, pp. 5-8. While most of these facts detailed above relate to Judge Blitch and others, the breadth of the government's misconduct demonstrates that the Suttons are a casualty of the government's blind, myopic pursuit of Judge Blitch.

## 1. The Government's Abuse of the Subpoena Power of This Court and Grand Jury Process

The U.S. Attorney's Office and FBI have consistently used this Court's subpoena power to compel witnesses to attend interviews by representatives of the U.S. Attorney's Office and the FBI, telling the witnesses that if they attended the interviews in Valdosta or Albany, then they would be released from subpoenas to testify before the grand jury in Macon. The government has accordingly improperly abused the grand jury as a tool to gather evidence in a criminal investigation. Still more gravely, as set forth at length herein, it has abused the grand jury process and subpoena power to harass and intimidate witnesses and further its investigative and prosecutorial aims.

## 2. Misconduct and Abuses Against Sheriff Peterson

On May 30, 2007, the FBI obtained a search warrant for Sheriff Peterson's office. The government then subpoenaed Sheriff Peterson to testify before the grand jury. The prosecutor did not inform Sheriff Peterson regarding his privilege against self-incrimination under the Fifth Amendment to the United States Constitution, or that he was a target of the investigation. On the

contrary, as with Mr. Sutton, AUSA Crane told Sheriff Peterson that he was *not* a target of the grand jury. The government subsequently indicted Sheriff Peterson based on his testimony before the grand jury. *See,* Indictment, *United States v. Winston Peterson,* Case No. 7:07-CR-34-0001 (HL); Motions to Suppress, Doc. # 16, p.3, Doc. # 76 (Sheriff Peterson was advised he was *not* a target of investigation during his grand jury testimony). The government has previously refused to furnish counsel for Sheriff Petereson with the affidavit that was given in support of the search warrant. The Court unsealed the affidavit on August 24, 2008, ( *United States v. Winston Peterson,* Case No. 7:07-CR-34-0001 (HL), Tab 108), and the affidavit was filed as an exhibit on August 25, 2008. *See United States v. Winston Peterson,* Case No. 7:07-CR-34-0001 (HL), Tab 109-2. The affidavit makes clear that, at the time Sheriff Peterson was subponaed to the grand jury, he in fact was a target of that grand jury investigation, despite the government's false representations to him to the contrary. *See Winston Peterson, Defendant's Renewed Motion to Suppress Grand Jury Testimony,* Tab 109. The affidavit, along with the governments' misrepresentations that Sheriff Peterson was not a target at the time he testified before the grand jury, exemplifies the government's outrageous misconduct throughout the investigation.

### 3. Clerk of Court Danny Lecesse and the Government's Knowledge of Evidence Relating to Mr. and Mrs. Sutton's Innocence

Mr. Danny Lecesse, Clerk of Court in Clinch County, was subpoenaed to testify before the grand jury, was compelled to testify against himself, and then was charged with the conduct he testified to. *See United States v. Lecesse,* 7:07-CR-21. Mr. Lecesse's information, drafted by AUSAs Crane and McEwen, effectively identified Mr. Sutton as an unindicted co-conspirator, CC 2, p.2, in utter contradiction of the U.S. Attorney's Office's full awareness that Mr. Sutton was not

12

involved with Judge Blitch's 2001 order regarding fees in misdemeanor cases, and that the 1992 order establishing a county probation system was expressly authorized by state statute. *See* O.C.G.A. § 42-8-100.

Moreover, the assessment of fees by the judiciary is expressly authorized by case law and opinions by the Attorney General for the State of Georgia. *See Gidden v. State, 156 Ga. App. 258,* 274 S.E. 2d 595 (1980) (juror costs, witness fees, bailiff fees, sheriffs costs, even for preserving evidence were allowable probation fees); 1983 Op. Atty Gen. Ga. 33 (probationer *can* be required to contribute to the cost of insurance covering personal liability of probation supervision program).

Mr. and Mrs. Sutton believe that Lecesse's testimony expressly and clearly contradicts several of the main allegations in its Indictment against them, and that in disregard of this evidence, the government proceeded to level these charges against them.

### 4. Misconduct and Abuses Against Magistrate Judge Linda Peterson and Ms. Sissy Suggs

Similarly, the government subpoenaed Clinch County Magistrate Judge Linda Peterson to the grand jury and then indicted her based on her grand jury testimony. Like Mr. Lecesse, Magistrate Judge Peterson was *not* informed that she was a target of the grand jury investigation and was *not* informed of her Fifth Amendment rights. *See United States v. Linda Peterson,* Case No. 7:07-CR-22-WLS, Motion to Suppress, Doc # 40.

In reviewing this conduct, this Court should be mindful that Department of Justice ethical rules prohibit the conduct at issue here. The United States Attorneys Manual explicitly states that, "It is the policy of the Department of Justice to advise a grand jury witness of his or her rights if such a witness is a 'target' or 'subject' of a grand jury investigation." U.S.A.M § 9-11.150.

13

The government also subpoenaed Ms. Sissy Suggs, a Sheriff's Department employee, who testified at the Linda Peterson trial that government counsel threatened that he would indict her and personally see that she would serve time, told her that she would not qualify for court-appointed counsel and that she was compelled to enter into a pretrial diversion agreement, even though she felt she had done nothing wrong. *See United States v. Linda Peterson,* Case No. 7:07-CR-22-WLS, Doc # 97, p. 14.

### 5. Misconduct and Abuses Against Attorneys

Mr. and Mrs. Sutton adopt by reference their Statement of Facts as set forth in their Motion to Disqualify, Doc # 96, pp. 2-5.

Also, AUSAs Crane and McEwen arranged to have attorney Tim Eidson secretly recorded while they were interviewing him, *see United States v. Eidson,* Case No. 5:08-CR-38-HL, Doc # 28, a practice that has been condemned as unethical by the Eleventh Circuit in civil cases.*See Parrott v. Wilson,* 707 F.2d 1262 (11th Cir. 1983); *Otto v. Box USA Group, Inc.,* 177 F.R.D. 698 (N.D. Ga. 1997). On information and belief, Mr. Eidson was then subpoenaed to testify before the grand jury in an attempt to set him up for a perjury trap, although he obtained counsel and did not go before the grand jury. Others were not quite so fortunate. The government also subpoenaed attorneys George McCranie and Robert Sumner, an 82 year-old World War II veteran. On information and belief, the government did *not* inform Mr. McCranie, or Mr. Sumner that they were targets of the grand jury investigation, and subsequently indicted both attorneys. *See United States v. Sumner,* Case No. 5:08-CR-33-HL, and *United States v. McCranie,* Case No. 7:08-CR-21-HL. Moreover, the Suttons on information and belief would show that like Mr. Sutton, Mr. McCranie thought he was aiding the government in their investigation.

14

This pattern of misconduct demonstrates that it was not an isolated instance and reveals that the government undertook this pattern of deceit in a calculated fashion. Instructive of the government's consciousness of wrongdoing in this regard is United States Attorneys Manual § 9-11.150 which provides, in relevant part:

> A grand jury may properly subpoena a subject or a target of the investigation and question the target about his or her involvement in the crime under investigation. *See United States v. Wong*, 431 U.S. 174, 179 n. 8 (1977); *United States v. Washington*, 431 U.S. 181, 190 n. 6 (1977); *United States v. Mandujano*, 425 U.S. 564, 573-75 and 584 n. 9 (1976); *United States v. Dionisio*, 410 U.S. 1, 10 n. 8 (1973). However, in the context of particular cases such a subpoena may carry the appearance of unfairness. Because the potential for misunderstanding is great, before a known "target (as defined in USAM 9-11.151) is subpoenaed to testify before the grand jury about his or her involvement in the crime under investigation, an effort should be made to secure the targets voluntary appearance. If a voluntary appearance cannot be obtained, the target should be subpoenaed only after the grand jury and the United States Attorney or the responsible Assistant Attorney General have approved the subpoena U.S.A.M. 9-11.150.

U.S.A.M. § 9-11.150. In this case, the government willfully violated Section 9-11.150 by issuing grand jury subpoenas to each of the individuals outlined herein without making any attempt to secure their voluntary appearance. This action by the government constitutes prima facie evidence of the government's willful abuse of this Court's subpoena power and the grand jury process.

## D. AUSA Donald Johstono Seeks Appointment as Judge of the Superior Court of Clinch County

Mr. and Mrs. Sutton adopt by reference the Statement of Facts set forth in their Motion to Disqualify the Middle District of Georgia U.S. Attorney's Office as if fully set forth herein. See, Doc # 96.

## E. The Government's Subpoenas to, and Search Warrant for, Sutton & Associates, P.C., and Seizure of Every Electronic Communication Between Mr. Sutton and His Counsel

Mr. and Mrs. Sutton adopt by reference the Statement of Facts set forth in their Motion to

15

Suppress Evidence related as if fully set forth herein. See, Doc # 113, pp. 2-9.

The agents' general search and seizure of Mr. Sutton's law office resulted in the seizure of privileged and confidential material and communications in unrelated matters handled by Mr. Sutton, as well as privileged and confidential material belonging to an attorney unaffiliated with Mr. Sutton or S&A, who rented office space in the building, and, most unconscionably, privileged and confidential communications between Mr. Sutton and his counsel.

## II.    ARGUMENT AND CITATION OF AUTHORITIES

Principles of Due Process and fairness, in view of the persistent and pervasive misconduct which has characterized this investigation and prosecution from its inception, forcefully urge that this proceeding be dismissed as against Mr. and Mrs. Sutton. Although Defendants are fully mindful that dismissal of an indictment is an extreme remedy, Defendants respectfully submit that this is an extreme and indeed, disturbing case, and that this Court may dismiss the Indictment against Mr. and Mrs. Sutton on the basis of the government's outrageous misconduct and vindictive prosecution.

## A. This Action May, and Should, Be Dismissed on Grounds of Outrageous Government Misconduct

The United States Supreme Court has acknowledged that an indictment is subject to dismissal under a court's supervisory powers if it was the product of "prosecutorial misconduct" which gives the court "'grave doubt' that the decision to indict was free from the substantial influence of" such misconduct. *Bank of Nova Scotia v. United States*, 487 U.S. 250, 108 S.Ct. 2369, 2374, 101 L.Ed.2d 228 (1988). And, in *United States v. Russell,* that there may be situations "in which the conduct of law enforcement agents is so outrageous that due process principles would

16

absolutely bar the government from invoking judicial processes to obtain a conviction..." 411 U.S. 423, 431-32 (1973). Although the instances where dismissal is appropriate are rare, this is a case where dismissal is warranted or, at the very least, this Court should allow all discovery related to the government's misconduct as set forth below. "The continuing vitality and integrity of our 'government of laws' would be imperiled if we sanctioned the manufacturing of crime by those responsible for upholding and enforcing the law." *United States v. Lard,* 734 F.2d 1290, 1296 (8th Cir. 1984). The Eleventh Circuit has further recognized that a prosecutor possesses a "duty to refrain from improper methods calculated to produce a wrongful conviction." *United States v. Crutchfield,* 26 F.3d 1098, 1103 (11th Cir. 1994) (citing *Eason,* 920 F.2d at 736 n. 8; quoting *Berger,* 295 U.S. at 88). A district court "may exercise [its] discretionary power to dismiss an indictment on grounds of prosecutorial misconduct where a sufficient showing of prejudice has been made." *United States v. Accetturo,* 858 F.2d 679, 681 (11th Cir. 1988) (citing *United States v. Holloway,* 778 F.2d 653, 655 (11th Cir. 1985)). As one court noted, the government's misconduct cannot go unremedied. *See United States v. Omni International Corporation,* 634 F. Supp. 1414, 1439 (D. Ma. 1986) (using the Court's supervisory power to dismiss the indictment and "condemn[ing] the manner in which the Government proceeded," and recognizing that the court" cannot now stand idly by, implicitly joining the federal judiciary into such unbecoming conduct").[2]

In this case, the government has obtained an indictment by using information from Mr. Sutton from interviews that were based on false representations that he was not a target of the

---

[2] The court in *Omni* was troubled by, among other things, the abuse of the grand jury subpoena power employed in an effort to circumvent an existing attorney-client privilege asserted by defendants through interviews with other attorneys who had represented defendants in which they posed hypothetical questions (based on transactions under investigation), and a particularly coercive interview of a former secretary.

17

investigation and that he would be granted letter immunity and would not have any information provided used against him. Further, the government violated an express agreement with this Court and counsel for Mr. Sutton and executed a general search which resulted in a wholesale violation of the Fourth Amendment and the attorney-client relationship between Mr. Sutton and his attorney.

The government's misconduct against Mr. and Mrs. Sutton is outrageous in the extreme and warrants dismissal of the Indictment against them. Other courts have held that dismissal was appropriate in far, far less egregious cases of misconduct. *See United States v. Twigg, 588* F.2d 373, 382 (3d Cir. 1978) (reversing the defendant's convictions relating to manufacture and distribution of methamphetamine based on outrageous government misconduct where Drug Enforcement Administration agents caused an informant to set up a methamphetamine laboratory in partnership with a drug dealer and provided the chemicals to the informant, and the defendant was arrested carrying drugs for the enterprise in order to repay a debt); *Lard,* 734 F.2d at 1297 (reversing the defendant's conviction for transferring an unregistered firearm where uncover Bureau of Alcohol Tobacco and Firearms agents went to the defendant's home and asked him if he had any firearms to sell, and then requested that the defendant manufacture a pipe bomb); *United States v. Gardner,* 658 F.Supp. 1573, 1580 (W.D.Pa. 1987) (granting the defendant's motion to dismiss indictment for unlawful distribution of a controlled substance for alleged violation of his due process rights based on outrageous government conduct where an informant for the United States Postal Inspectors kept badgering the defendant to provide him with cocaine, and the defendant finally obtained some cocaine for the informant as a go-between)

Moreover, to cap its succession of misdealing and misdeeds, the government now seeks forfeiture of Mr. and Mrs. Suttons' house in an action prosecuted by AUSA Johstono, *See*

18

*United States v. One Parcel of Real Property at 120 Sutton Way,* Case No. 7:08-CV-81, Middle District of Georgia, who attempted to obtain a highly improper and unseemly personal financial interest in a position which is the subject of this Indictment. The Eleventh Circuit found a similar appearance of impropriety sufficient to warrant reversal in *United States v. Crutchfield,* where it reversed the defendants' convictions for illegal importation of exotic reptiles into the United States based on prosecutorial misconduct, including the fact that "[t]he record in this case clearly indicate[d] that the prosecutor, from the outset of the [defendants'] trial, was more than professionally interested in its outcome. The prosecutor himself was... an expert in the field of reptiles[ ] and apparently had been a previous customer of the [defendants]." 26 F.3d at 1100.

The prejudice from the government's persistent and outrageous misconduct against Mr. and Mrs. Sutton is evident. Mr. and Mrs. Sutton now stand in peril of losing their liberty and property in violation of their Fifth Amendment rights as a result of the government's faithless and false assurances that they would receive immunity and that any information provided by them would not be used against them. The government further knowingly and wilfully withheld from the grand jury's consideration evidence which directly contradicted its asserted charges against them as detailed in the Motion to Dismiss Indictment. *See* Doc # 88, pp. 42-45. It is clear that, but for this egregious misconduct, especially if the government had kept its word, Mr. and Mrs. Sutton would not currently be under indictment.

While dismissal is a drastic remedy, there is no lesser remedy that will preserve the integrity of the criminal justice system and protect Mr. and Mrs. Sutton from the consequences of the prosecution's pervasive and repeated outrageous misconduct. For the reasons explained, suppression is not enough. There is, in short, nothing else this court can do that will effectively penalize the

19

prosecution, preserve the grand jury process, provide a remedy for the prejudice to Mr. and Mrs. Sutton, or deter future misconduct. *Compare McNabb v. United States,* 318 U.S. 332, 343 (1943) (the court's supervisory power to remedy government misconduct is predicated on the need to penalize government wrongdoing, provide a remedy for affected individuals and to deter future wrongdoing). For the reasons set forth herein, this Court may, and should, dismiss the charges against Mr. and Mrs. Sutton on the basis of outrageous government misconduct. To permit this prosecution to proceed against them would effectively sanction the government's persistent and willful disregard of the Defendants' fundamental Due Process rights.

**B.      This Action May, and Should, Be Dismissed on Grounds of the Government's Abuse of the Grand Jury Process and This Court's Subpoena Power**

While the government's misconduct against Mr. and Mrs. Sutton alone is abundantly sufficient to warrant dismissal of the Indictment against them, its pattern of misconduct against Mr. and Mrs. Sutton must be viewed against the backdrop of its outrageous misconduct throughout its investigation and prosecution of individuals within Clinch County and the Alapaha Judicial Circuit. As has been set forth at length, the government has has procured a sham State indictment of Eddie Tucker, and it has made deliberate misrepresentations to attorneys, officials and judicial employees subpoenaed to come before the grand jury regarding their status before the grand jury, in knowing violation of Department of Justice policy, those individual's Fifth Amendment rights, in a shocking abuse of the grand jury and subpoena power of this Court. The government's persistent and flagrant misconduct against Mr. and Mrs. Sutton alone would furnish a sound basis for dismissal of the charges against them–dismissal is uniquely appropriate here, given that the misconduct perpetrated against them is, but another instance in a course of outrageous misconduct

20

which characterizes its investigation and prosecution of this matter.

Federal Rule of Criminal Procedure 17(a) provides, in relevant part, that a subpoena shall 'command the witness to attend and testify at the time and place the subpoena specifies." Fed.R.Crim.P. 17(a). This language has been interpreted to mean that witnesses may be subpoenaed to give testimony at formal proceedings, such as grand jury proceedings, preliminary hearings, and trials. *See United States v. LaFuente,* 991 F.2d 1406, 1411 (8th Cir. 1993); *see also United States v. Keen, 509* F.2d 1273, 1274-75 (6th Cir. 1975); *United States v. Hedge,* 462 F.2d 220, 222-23 (5th Cir. 1972); *United States v. Standard Oil,* 316 F.2d 884, 897 (7th Cir. 1963). It does not authorize the Government to use grand jury subpoenas to compel prospective grand jury witnesses to attend private interviews with government agents. *See LaFuente,* at 1411. Such abuse of process can form an important link in a chain of reversible prosecutorial misconduct. *See United States v. LaFuente, 54* F.3d 457, 461 (8th Cir. 1995). And, the court's subpoena power may not, however, be used by the United States Attorney's office as part of its own investigative process. *See United States v. Elliott,* 849 F.2d 554 (11th Cir. 1998); *United States v. DiGilio,* 538 F.2d 972, 985 (3d Cir. 1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 733 (1977). The government's use of the Grand Jury subpoena process in this case for witness interview purposes is but another fact warranting the dismissal of this action.

## C. This Action May, and Should, Be Dismissed on Grounds of Prosecutorial Vindictiveness

The charges against Mr. and Mrs. Sutton are equally vulnerable to dismissal in that they are plainly motivated by an overwhelming vindictiveness on the part of the government. Vindictive prosecution may be found where "there is a realistic or reasonable likelihood of prosecutorial conduct that would not have occurred but for hostility or punitive animus towards the defendant

21

because he exercised his specific legal right." *United States v. P.H.E., Inc.,* 965 F.2d 848, 858 (10th Cir. 1992) (quoting *United States v. Raymer,* 941 F.2d 1031 (10th Cir. 1991); quoting *United States v. Gallegos-Curiel,* 681 F.2d 1164, 1169 (9th Cir. 1982)). "It is well *settled that a federal court may dismiss an indictment if the accused produces evidence of actual prosecutorial vindictiveness sufficient to establish a due process violation, or even if a defendant demonstrates a likelihood of vindictiveness sufficient to justify a presumption." United States v. Wilson,* 120 F.Supp.2d 550, 555 (E.D.N.C. 2000) (emphasis added). "[E]ven a good faith decision to continue a constitutionally tainted prosecution does not erase the taint when, as alleged here, the prosecution continues to utilize the fruits of the tainted behavior." *P.H.E., Inc.,* at 859. Moreover, "a prosecution tainted by impermissible prosecutorial or police misconduct is not cured by turning it over to a new prosecutor, or, even, a grand jury." *Id.* at 859 (citing *Giglio v. United States, 405* U.S. 150, 154 (1972); *United States v. Pascal, 496* F.Supp. 313 (N.D.Ill. 1979)). A court "may not permit vindictiveness to be hidden behind procedural cosmetics." *Id.* at 858.

AUSA Crane and other representatives of the U.S. Attorney's Office obtained an Indictment against Mr. and Mrs. Sutton after Mr. and Mrs. Sutton had been "honest" and "forthright" with the government and had voluntarily provided it with substantial information. The government's prosecution of Mr. and Mrs. Sutton on the heels of this cooperation, and after AUSA Crane's assurances that they would receive an immunity letter and would not have any information they provided used against them, gives rise to a "likelihood" that the government brought the charges as a result of animus and to punish Mr. and Mrs. Sutton. The government's vindictiveness against Mr. and Mrs. Sutton is substantially more egregious than that committed by the government in *United States v. Wilson,* in which the defendant successfully appealed from his conviction in the United

States District Court for the District of South Carolina for possession of a firearm. 120 F.Supp.2d at 552. One year later, a Deputy Marshal sent a memorandum to the United States Attorney's Office for the Eastern District of North Carolina, where the defendant then resided, accusing the defendant of threatening a federal judge at his original sentencing. *Id.* When no prosecution of the defendant followed, the sitting United States Attorney for the District of South Carolina personally requested that the defendant be prosecuted, and the defendant was indicted. *Id.* The defendant filed a motion to dismiss the indictment for vindictive prosecution, which was granted by the district court. *Id.* The government moved for reconsideration, and the district court denied the motion, holding:

> Based on the facts set forth above, it is clear and convincing to this court that "but for" defendant's successful appeal and the personal request of the U.S. Attorney in South Carolina, the government would not have prosecuted this matter...
> Thus, based on the record which includes all the declarations and documents the government has filed under seal, the exhibits and affidavits the defendant has filed, and the testimony from the lengthy and comprehensive evidentiary hearing, the court finds that there is clear and convincing evidence that the government engaged in actual vindictive prosecution. This court strongly believes that "[w]hile the Department of Justice has the responsibility to protect the citizens of this nation against those who pose a threat to the safety of the community, it must do so within the reach of the Constitution."

*Id.* at 556 (quoting *Maddox v. Elize,* 83 F.Supp.2d 113 (D.D.C. 1999)). In contrast to the government's actions *in Wilson,* the government in this case was far more vindictive than merely pressing prosecution of Mr. and Mrs. Sutton-it actively engaged in a series of false representations and inducements, abuse of the grand jury's power, and disregard of favorable evidence.

## D.    In the Alternative This Court Should Order Disclosure of the Grand Jury Transcripts

The Fifth Circuit addressed the subject of inaccurate advice by a prosecutor to a grand *jury* in *United States v. McKenzie,* 678 F.2d 629 (5th Cir. 1982). In *McKenzie,* a grand jury asked

23

the prosecutor the significance of 10 - 10 tie in any vote to indict. The prosecutor implied that he did not know the answer, despite the fact that he had earlier informed the grand jury that any vote of less than twelve would result in a "no true bill." *Id.* at 633.[3] The Fifth Circuit examined the grand jury transcripts and ruled that the prosecutor's answer was not only "error" but "highly objectionable." *Id.; see also United States v. Peralta,* 763 F. Supp. 14 (S.D.N.Y. 1991) (dismissing indictment, in part, because prosecutor misstated the law to the grand jury relating to the requirements of constructive possession); *United States v. Sousley,* 453 F. Supp. 754, 758 n. 1 (W.D.Mo. 1978) (in reversing conviction on double jeopardy grounds, the court criticized the prosecutor for inaccurately answering a question by the grand jury and recognized that "United States grand juries, persons subject to potential indictment, and the proper administration of criminal justice ... require that Assistant United States Attorneys conduct sufficient legal research to be in a position to give accurate answers to questions they may be asked by members of a grand jury").

Similarly, in *United States v. Twerksy,* 1994 WL 319367 (S.D.N.Y. June 29, 1994), the defendant moved to dismiss the indictment, arguing that the grand jury had been mis-instructed on the *mens rea* element of the money laundering charges. While recognizing that a prosecutor need not give the grand jury legal instructions as comprehensive as those given to the petit jury, the court agreed to conduct an *in camera* review of the transcripts, reserving a decision on the merits of the motion to dismiss.

---

[3] The Fifth Circuit ultimately did not reverse the conviction because its examination of the full grand jury transcript revealed that the grand jury continued to deliberate, eliminating counts and otherwise demonstrating its independence.

It is respectfully requested that this Court either adopt the approach taken by the district court in *Twerksy* or simply grant the Sutton's request for disclosure. Rule 6(e)(3)(C)(i) permits the disclosure of matters occurring before a grand jury "when so directed by a court preliminarily to or in connection with a judicial proceeding." Courts have granted limited disclosures under this subsection where the moving party has demonstrated a particularized need. *United States v. Sells Engineering Inc., 463* U.S. *418,* 103 S.Ct. 3133 (1983); *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 99 S.Ct. 1667 (1979); *Miller v. Wainwright,* 798 F.2d 426, 429 (11th Cir. 1986). To meet this standard, the moving party must show that:

a)      the material is needed to avoid a possible injustice in another judicial proceeding;

b)      the need for disclosure is greater than the need for continued secrecy, and

c)      the request is structured to cover only material so needed.

*Sells, 463* U.S. at 443.

Disclosure is warranted under these standards.

a.      The material requested is needed in order to avoid a possible injustice in another "judicial proceeding," i.e., the instant case. The Suttons are entitled to determine whether the government's construction of the language of the indictment is unsupported by what *actually occurred* before the indicting grand jury.

b.      Since the indictment has been returned the government's "need for continued secrecy" is greatly diminished. "Once the grand jury has concluded its activities, the considerations justifying secrecy become less crucial." *In Re Grand Jury Proceedings (DAEWOO),* 613 F. Supp. 672, 679 (D. Or. 1985); *see generally Douglas Oil Co.,* 441 U.S. at 222-23; *United States v. Evans & Associates Const. Co., Inc., 839* F.2d 656 (10th Cir. 1988).

c.    Although the Suttons' request is broad, it is necessary for the purpose of determining the breath and extent of prosecutorial misconduct as set out above.  An analogous situation occurred in *Horizon of Hope Ministry v. Clark County, Ohio,* 115 F.R.D. 1 (S.D. Ohio 1986). In that case, the plaintiff filed a civil rights suit against Clark County, Ohio and its employees. The government moved for a protective order barring discovery, in part, on the grounds of grand jury secrecy. In ordering disclosure, the district court emphasized that the grand jury investigation involved the same subject matter as the civil rights lawsuit but was over by the time the suit was initiated. *Id.* at 3. Moreover, the court recognized that any remaining secrecy interests could be safeguarded through a protective order. *Id.* at 4; *see also United States v. Kilpatrick,* 570 F. Supp. 505, 518-19 (D. Colo. 1983) (ordering that "the entire grand jury transcript dealing with this indictment be made availablefor study by defense counsel" with specific safeguards imposed).

In *United States v. Jacobson,* 691 F.2d 110, 116 (2d Cir. 1982), the Court ordered the disclosure of "all relevant transcripts of all grand juries" in order to determine whether misconduct occurred. Moreover, the Suttons seek to determine whether in returning the instant indictment, the grand jury *necessarily* found the essential elements of the crime sufficient to comply with the Presentment Clause of the Fifth Amendment.

For these reasons, disclosure is warranted under Rule 6(e)(3)(C)(ii). That Rule states in pertinent part:

(C) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made.

\*\*\*

(ii) when permitted by the court at the request of the defendant, upon a showing that

26

> *grounds may exist for a motion to dismiss the indictment* because of matters
> occurring before the grand jury.

(Emphasis added). Under the plain reading of the Rule, for disclosure to be warranted, a defendant

need **not** prove that he is *already* entitled to dismissal of the indictment. Rather, he must only make

out a prima facie case that such grounds "may" exist. *See* Advisory Committed Note to Rule 6

(stating that rule requires a "preliminary factual showing of serious misconduct"). The Suttons have

made such a prima facie case.

An analogous situation also occurred in *United States v. Kilpatrick,* 570 F. Supp. 505. In that

case, a grand jury investigation was conducted in Colorado by prosecutors from the Tax Division

of the Department of Justice into alleged obstruction of justice by William Kilpatrick. Mr.

Kilpatrick's attorneys made accusations of prosecutorial misconduct before the grand jury, many of

which were "disputed by the accused government counsel and agents" and others were characterized

as "silly" by government counsel. *Id.* at 506, 510. After an evidentiary hearing was conducted, the

court found that although the charges were still not proven, the accusations were "made sincerely"

and there was at least "some" evidence to support them. *Id.* at 511, 518. The court further noted that

it did not have the time to fully study the entire grand jury transcript and "even if I had the time,

nuances recognizable by counsel wouldn't be apparent to me." *Id.* at 518. The court then ordered that

"the entire grand jury transcript dealing with this indictment be made available for study by defense

counsel." *Id.* As safeguards, the court added the following conditions:

> Disclosure shall be made to counsel and only to counsel. Paralegal shall not
> be used as substitute lawyers, and only members of the bar shall examine the
> transcript. They shall hold secret matters they learn, and they shall discuss
> them with no one other than co-counsel, and, insofar as necessary to the
> preparation of their arguments, with their clients. Typists given direct or

27

indirect information concerning the content of the transcript shall [receive] ... a copy of a written order commanding that they hold secret any information learned by them as to what took place before the grand jury, and those receipted orders shall be filed with the clerk. During the time a transcript is being used to prepare arguments in this case, counsel shall be personally responsible for its secrecy, and when not in actual use, the transcript shall be placed in locked storage to which only counsel has access. When need for the transcripts no longer exist, all copies of it shall be returned to the United States Attorney to remain in his custody and control. All briefs disclosing grand jury testimony shall be sealed.

*Id.* at 519.[4]

Counsel do not object to the imposition of safeguards, such as those imposed in *Kilpatrick*.

Without an examination of the grand jury transcripts, the extent of the government's misconduct

related to the instant investigation cannot be fully scrutinized. Disclosure is, therefore, appropriate.

---

[4] After reviewing the results of the ordered disclosures, the district court ultimately dismissed the indictment for prosecutorial misconduct and various forms of grand jury abuse. *See United States v. Kilpatrick, 594* F. Supp. 1324 (D. Colo. 1984). The Tenth Circuit subsequently reversed the dismissal in *United States v. Kilpatrick,* 821 F.2d 1456 (10th Cir. 1987). However, the Tenth Circuit did not question the district court's earlier published decision concerning the release of grand jury transcripts. Indeed, both the Tenth Circuit and the United States Supreme Court reviewed these very transcripts in deciding that the district court's remedy was too severe under the circumstances. *See Bank of Nova Scotia,* 487 U.S. at 257-263; *Kilpatrick,* at 1470.

## III.   CONCLUSION

Based upon all the foregoing reasons and authorities, Mr. and Mrs. Sutton respectfully request that their Motion to Dismiss Based Upon Outrageous Governmental Conduct be granted. At minimum, the Suttons' Request that this Court grant their request to inspect the entirety of the grand jury transcript related to this investigation. Defendants also request the ability to conduct discovery on the issues presented herein and an evidentiary hearing.

This 25th day of August, 2008.

GILLEN, WITHERS & LAKE, LLC

**s/Thomas A. Withers, Esq.**
Thomas A. Withers, Esq.
Georgia Bar Number: 772250
Attorney for Defendant Berrien Sutton

8 East Liberty Street
Savannah, Ga. 31401
(912) 447-8400
E-Mail: Twithers@gcpwlaw.com

**s/Charles E. Cox, Jr., Esq.**
Charles E. Cox, Jr., Esq.
Attorney Bar Number: 192305
Attorney for Lisa Sutton

P.O. Box 67
Macon, Georgia 31202-0067
Telephone: (478) 757-2990
Facsimile: (478) 757-2991
E-Mail: cecoxjr@cbi.mgacoxmail.com

29

## CERTIFICATE OF SERVICE

The undersigned certifies that I have on this day served all the parties in this case in accordance with the notice of electronic filing ("NEF") which was generated as a result of electronic filing in this court.

AUSA, Leah E. McEwen, via email: Leah.E.McEwen@usdoj.gov

Charlie Cox, Esq., via email: cecoxjr@cbi.mgacoxmail.com

John J. Ossick , Jr, via email: ossick@tds.net

Robert Stuart Willis, via email: rwillislaw@aol.com

This  25th  day of _August___, 2008.

**s/ Thomas A. Withers, Esq.**
Thomas A. Withers, Esq.
Georgia Bar Number: 772250
Attorney for Berrien Sutton

Gillen, Withers & Lake, LLC
8 East Liberty Street
Savannah, Georgia 31401
Telephone:  (912) 447-8400
E-Mail: Twithers@gcpwlaw.com